IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAMES EARLE STINSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 2:09cv994-WKW |
| ) | (WO) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence filed by federal inmate James Earle Stinson ("Stinson"). After due consideration of Stinson's § 2255 motion, the supporting and opposing submissions, and the record in this case, the court concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the § 2255 motion should be denied.

**I.  BACKGROUND**

On April 28, 2008, in accordance with a plea agreement, Stinson pled guilty to possession with intent to distribute marijuana, in violation of 18 U.S.C. § 841(a)(1), and using or carrying a firearm during and in relation to, or possessing a firearm in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Following a sentencing hearing on October 29, 2008, the district court sentenced Stinson to 46 months in prison for the drug offense and to 60 months in prison for the firearm offense, the sentences to run

consecutively. Stinson did not appeal.[1]

On October 28, 2009, Stinson, through counsel, filed this § 2255 motion in which he asserts the following claims:

   1.   He is actually innocent of violating 18 U.S.C. § 924(c)(1)(A).

   2.   His trial counsel rendered ineffective assistance.

   3.   His guilty plea was not knowing and voluntary.

The government answers that Stinson's claims are either meritless, wholly without factual support, or barred by the waiver provision in the plea agreement. (Doc. No. 26-8.)

## II.   DISCUSSION

### A.   *General Standard of Review*

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that

---

[1]The plea agreement contained a waiver provision whereby Stinson relinquished his rights to appeal and collaterally attack his sentence except on grounds of ineffective assistance of counsel and prosecutorial misconduct. (Doc. No. 26-2 [Gov. Exh. B] at 6-7.)

could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted); *see Hill v. United States*, 368 U.S. 424, 428 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice."). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent...."

### B. *Actual Innocence as to 18 U.S.C. § 924(c)(1)(A) Firearm Offense*

With regard to the firearm offense for which he was convicted, Stinson asserts that he is "actually innocent" of violating 18 U.S.C. § 924(c)(1)(A) because, he says, the conduct underlying his conviction did not constitute a criminal offense under that statute. (Doc. No. 1 at 2; Doc. No. 2 at 9-13.) Specifically, he contends that the facts of his case establish only that "police found a quantity of drugs and weapons" in his residence, which "does not trigger prosecution under 18 U.S.C. § 924(c)(1)." (Doc. No. 2 at 13.)

Section 924(c)(1)(A) makes it an offense to either (1) use or carry a firearm during and in relation to a crime of violence or drug trafficking crime **or** (2) possess a firearm in furtherance of such crime.[2] *See, e.g., United States v. Timmons*, 283 F.3d 1246, 1250-53

---

[2] 18 U.S.C. § 924(c)(1) provides, in pertinent part:

(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in

(11th Cir. 2002); *United States v. Daniel*, 173 Fed.Appx. 766, 770 (11th Cir. Mar. 23, 2006) ("Thus, there are two separate ways to violate the statute: to use or carry a firearm during and in relation to a drug trafficking crime or to possess a firearm in furtherance of a drug trafficking crime."). Where the language of a statute proscribes several means by which the defendant might have committed a violation, the government may charge the offense conjunctively and satisfy its burden of proof by any one of the means, i.e., disjunctively. *See United States v. Cornille*, 92 F.3d 1108, 1110 (11th Cir. 1996); *United States v. Griffin*, 705 F.2d 434, 436 (11th Cir. 1983). Section 924(c)(1)(A) is an example of such a statute. *See, e.g., United States v. Lott*, 310 F.3d 1231, 1246-47 (10th Cir. 2002) (count of indictment charging that defendant "knowingly carried and possessed a firearm ... during and in relation to and in furtherance of a drug trafficking offense" could support a conviction under § 924(c)(1)(A) either for carrying a firearm during and in relation to a drug trafficking crime, or for possessing the firearm in furtherance of the drug trafficking crime).

Count 4 of the indictment in Stinson's case charged, in pertinent part, that Stinson "knowingly used and carried firearms, to-wit: [eight firearms listed by manufacturer, model, and serial number] during and in relation to, and possessed in furtherance of, a drug

---

relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime – (i) be sentenced to a term of imprisonment of not less than 5 years[.]

trafficking crime ..., in violation of Title 18, United States Code, Section 924(c)(1)(A)." (Doc. No. 26-1 [Gov. Exh. A] at 3-4.) Accordingly, the government was required to prove either that Stinson used or carried a firearm during and in relation to his drug trafficking crime or that Stinson possessed a firearm in furtherance of his drug trafficking crime. *Timmons*, 283 F.3d at 1250-53.

Stinson addresses most of his "actual innocence" argument to whether the conduct underlying his § 924(c)(1)(A) conviction involved his use or carrying of a firearm during and in relation to his drug trafficking crime – that is, the "use or carry" prong of § 924(c)(1)(A). In this regard, he asserts that under *Bailey v. United States*, 516 U.S. 137 (1995), his conduct did not establish criminal liability under the statute. (Doc. No. 2 at 11-13.) In *Bailey*, the Supreme Court held that a conviction under the "use" prong of § 924(c)(1) requires the government to demonstrate "active employment" of the firearm, not its mere possession, during and in relation to the predicate crime. 516 U.S. at 143-44. However, the pre-1998 version of § 924(c)(1) made it an offense only to use or carry a firearm during and in relation to the predicate crime. The *Bailey* decision's narrow interpretation of "use" under § 924(c)(1) prompted Congress to amend the statute in 1998 to add language directed to *possessing* a firearm "in furtherance of" the predicate crime. *See Timmons*, 283 F.3d at 1252. Stinson's offense and indictment occurred well after the 1998 revision of the statute, and, as indicated above, Count 4 of his indictment could support a conviction under § 924(c)(1)(A) either for using or carrying a firearm during and in relation to a drug trafficking crime, or for

5

possessing the firearm in furtherance of the drug trafficking crime.

"To establish actual innocence, [a petitioner] must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks omitted). This means "factual innocence, not mere legal insufficiency." *Id*. Stinson clearly cannot show that he is "actually innocent" of his § 924(c)(1)(A) conviction. He admitted during his guilty plea hearing, when providing the factual basis for his plea, that he "[had] in [his] possession the eight firearms that are listed in the indictment and in the plea agreement" and that he "possessed those firearms in connection with or in furtherance of ... [his] possession of marijuana with the intent to distribute it." (Doc. No. 26-3 [Gov. Exh. C] at 13.) In the light of this inculpatory statement, any reasonable juror could only conclude that Stinson possessed firearms in furtherance of a drug trafficking crime, in violation of § 924(c)(1)(A). *See Rosario v. United States*, 164 F.3d 729, 734 (2nd Cir. 1998) (holding that defendants could not show their actual innocence of convictions under the "use or carry" prong of § 924(c) because, during their guilty plea allocutions, they admitted carrying, or using and carrying, firearms in connection with the sale of drugs).

Moreover, the presentence report in Stinson's case set forth the following uncontested facts concerning the search of Stinson's residence[3]:

---

[3]The Supreme Court's opinion in *Bousley* suggests that, when assessing a claim of actual innocence, it is proper for a court to consider all evidence in the record, and not merely the evidence presented during the plea colloquy. *See* 523 U.S. at 624-25

> Agents recovered five shotguns, one of which was stolen; one rifle; three pistols and one revolver during the search. Approximately six pounds of marijuana and smaller amounts of suspected cocaine power and cocaine base were also seized. In the back bedroom shared by the defendant and [his girlfriend], agents founds several bags of suspected marijuana, two cellular telephones, a Ruger, Model 22/45, .22 caliber pistol, Serial Number [...], an RG Industries, Model RG3, .22 caliber pistol, Serial Number [...], and a Phoenix Arms, Model HP22, .22 caliber pistol, Serial Number [...]. A Mossberg, Model 500A, 12 gauge pistol grip, pump shotgun, loaded with five rounds, Serial Number [...], was found in the bathroom. Three bags of suspected marijuana were found in the kitchen, along with $1,000 in cash found on the kitchen table, small baggies of suspected crack and powder cocaine, and a Revelation Model 400 12 gauge shotgun. Agents also located a large shopping bag containing approximately three pounds of suspected marijuana on the kitchen floor. A Taurus .45 caliber pistol, Serial Number [...], with two magazines and ammunition, was found behind a speaker in the living room. Agents asked Stinson if he had additonal cash in the house and he directed them to a pair of khaki pants in the first bedroom in the front of the house. Agents found $2,200 cash in the pants pocket. Two pounds of marijuana were located in a shopping bag on top of a refrigerator in the garage. Agents looked outside in the back yard and observed several pit bulls and other dogs attached to chains. One of the more vicious dogs was standing beside a trash can. When asked what was in the can, Stinson stated "seeds" which were his "crop" seeds for planting. Stinson removed the trash can and agents looked inside it to find it half full of marijuana seeds.... Agents located and confiscated a Savage Model 67, 12 gauge shotgun, Serial Number [...], a Savage Model 9478, 12 gauge shotgun, Serial Number [...], and a Benelli, M1 Super 90, 20 gauge shotgun, Serial Number [...], during the search.

(Presentence Investigation Report at p. 5, ¶ 10; references to exhibit numbers removed.)

To establish that a firearm was possessed "in furtherance" of a drug trafficking crime, the government must show "'some nexus between the firearm and the drug selling operation.'" *Timmons*, 283 F.3d at 1253 (quoting *United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001)). The nexus between the gun and the drug operation can be established by

> "the type of drug activity that is being conducted, accessibility of the firearm,

7

the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to the drugs and drug profits, and the time and circumstances under which the gun is found." While these factors are not exclusive, they "distinguish possession in furtherance of a crime from innocent possession of a wall-mounted antique or unloaded hunting rifle locked in a cupboard."

*Timmons*, 283 F.3d at 1253 (quotations omitted).

Here, numerous firearms, some of which were loaded and at least one of which was stolen, were found throughout Stinson's residence in close proximity to drugs, apparent drug profits, and other indicia of narcotics trafficking. These facts establish a nexus between the firearms and the drug trafficking crime (to which Stinson also pled guilty). Even without Stinson's admission that he possessed the firearms in furtherance of his drug trafficking crime, a jury could have reasonably inferred from these facts that the guns were used to protect Stinson's drugs in furtherance of his drug dealing. Again, Stinson fails to demonstrate "that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623.

In *Schlup v. Delo*, 513 U.S. 298 (1995), the Supreme Court observed:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.... To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

513 U.S. at 324.

Stinson does not present any "new reliable evidence" of his actual innocence

sufficient to satisfy his burden under *Schlup*'s standards.

### C. Ineffective Assistance of Counsel

Stinson asserts that his trial counsel rendered ineffective assistance by failing to file a motion to suppress the evidence. (Doc. No. 1 at 1-2; Doc. No. 9 at 1; Doc. No. 20-2 at 1.)

Stinson does not state with any clarity the legal grounds upon which he maintains that a motion to suppress could have been successful in his case. Nor does he allege any specific facts in support of this claim. In an affidavit that he filed with court, Stinson asserts: "I asked [counsel] to suppress the search warrant and he did not do so." (Doc. No. 20-2 at 1.) However, Stinson does not suggest on what basis the search warrant should been suppressed. In this regard, his post-conviction counsel does no more than assert that Stinson may have had "colorable claims" to file a motion to suppress because "there was no evidence in support of the search warrant that any drug transactions had occurred in the residence." (Doc. No. 9 at 1.) However, this conclusory assertion remains unsupported by further argument or factual allegations.

The record before this court, moreover, does not yield any self-evident basis for filing a suppression motion. The presentence report reflects that, prior to the search of Stinson's residence, a drug courier who was arrested by DEA agents in a tractor trailer carrying approximately 300 pounds of marijuana informed agents that he had delivered large loads of marijuana to Stinson's residence as part of a drug trafficking ring. (Presentence Investigation Report at pp. 4-5, ¶¶ 8-9.) Based on this information and additional

9

intelligence gathered in the course of his investigation, a DEA agent filed for and obtained a warrant to search Stinson's residence. (*Id.*)

Stinson's trial counsel, Donnie W. Bethel, filed an affidavit with this court addressing Stinson's allegations of ineffective assistance of counsel. (Doc. No. 13.) Bethel avers, in relevant part:

> Petitioner's only pretrial claim is that counsel was ineffective in failing to move to file a motion to suppress the evidence. I discussed filing such a motion with Petitioner. Based on the evidence, I informed him that, in my opinion, a suppression motion had little chance of success. Further, Petitioner wanted to cooperate in an effort to provide substantial assistance to Government agents so that he could receive a downward departure in his sentence. I advised Petitioner that the Government routinely looks more favorable upon efforts to cooperate when defendants forgo pursuing motions to suppress and other pretrial motions. I informed Petitioner that I would not be filing a motion to suppress, and he understood that.

(Doc. No. 13 at 1-2.)

A claim of ineffective assistance of counsel is governed by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). *Grossman v. McDonough*, 466 F.3d 1325, 1344 (11th Cir. 2006). Under *Strickland*'s two-part test, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (internal quotation marks omitted); *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *See Strickland*, 466 U.S. at 687. Accordingly, once a court

decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

With his cursory allegation that Bethel was ineffective for failing to file a motion to suppress, Stinson fails to meet either prong of *Strickland* on this issue. He has not demonstrated that Bethel's decison to forgo a suppression motion was professionally unreasonable or that he was prejudiced as a result of Bethel's action in this regard. Therefore, he is not entitled to any relief based on this claim.

In his affidavit filed with this court, Stinson also expresses dissatisfaction with the attorney who represented him at sentencing, Michael L. Kidd. (Doc. No. 20-2 at 1-2.) Stinson maintains that Kidd did not give him adequate notice of the date of the sentencing hearing and that, consequently, he did not have his friends and family present at that hearing. (*Id*.) According to Stinson, "the Judge would have been kinder to me" if his friends and family were at his sentencing hearing. (*Id*. at 2.) Stinson does not indicate whether he expected his friends and family members to testify at the sentencing hearing, nor does he suggest what their testimony would have been. His contentions in this regard are entirely speculative and are insufficient to show prejudice as required under *Strickland*.

Stinson also suggests that Kidd indicated to him that he would talk to the prosecutor "and get me something better that what I already had" and that Kidd "was supposed to take

11

me back before Judge Watkins but he never did." (Doc. No. 20-2 at 2.) Stinson's vague allegations are unsupported by the terms of his plea agreement and the transcripts of the change of plea hearing and sentencing hearing. Moreover, any representations Kidd purportedly made to Stinson could not have influenced Stinson's decision to plead guilty. Kidd was not retained as Stinson's counsel until after the change of plea hearing. Finally, it appears that Kidd did in fact work with the prosecutor to ensure that Kidd received an additional reduction in his offense level based on substantial assistance to the government provided through a proffer.[4] (Doc. No. 26-4 [Gov. Exh. D] at 4-7.) Stinson is not entitled to any relief based on his claims that Kidd rendered ineffective assistance of counsel.

### D.  *Knowing and Voluntary Guilty Plea*

Stinson contends that his guilty plea was not knowing and voluntary. (Doc. No. 1 at p. 5; Doc. No. 2 at 7-9.) Again, Stinson presents precious few facts in support of his claim

---

[4]In an affidavit filed with this court, Kidd states, in relevant part:

> At the time I was retained, Mr. Stinson had previously entered into a plea agreement with the government and I had an opportunity to discuss the factual basis for the plea with Mr. Stinson. I discussed the consequences of withdrawing the plea and possible courses of action in preparing for sentencing. I spoke with the AUSA, Verne Speirs, and he advised that Mr. Stinson would be eligible for a 5K.1 downward departure and that Mr. Stinson had attempted to proffer with the government, but the proffer had been highly unsuccessful due to lack of cooperation on the part of Mr. Stinson. AUSA Speirs advised he would like to attempt a proffer with Mr. Stinson, provided he would cooperate and speak truthfully. I advised my client of the same and we agreed the best course of action would be to proffer. A proffer was made where the government was satisfied with the information that was offered and as a result filed the 5K.1 motion with the court.

(Doc. No. 14 at 1.) The record reflects that the district court granted the § 5K.1 motion. (Doc. No. 26-4 [Gov. Exh. D] at 4-7.)

for relief.  Stinson suggests that had his counsel, Bethel, filed a suppression motion and succeeded in suppressing the government's evidence, the outcome of his plea and sentencing would have been substantially different.  (Doc. No. 9 at 1; Doc. No. 20-2 at 1.)  However, as previously indicated, Stinson has presented this court with nothing tending to show that a suppression motion would have been successful.  Stinson also asserts that Bethel "did not do anything I asked him to [do]."  (Doc. 20-2 at 1.)  His only specific allegations in this regard concern Bethel's failure to file a suppression motion and Bethel's alleged failure to attempt to obtain a pretrial release bond so that he could "check on one of my kids who I thought had run away from home."  (*Id.*)  Even assuming Bethel failed to act diligently in obtaining a release bond, Stinson never alleges that his will was overborne by Bethel's failure to obtain the bond or that he would not have pled guilty had Bethel obtained the bond. Because, there is nothing in the record suggesting a reasonable possibility that, but for Bethel's allegedly deficient performance, Stinson would not have pled guilty and would have instead insisted on going to trial, *see Hill v. Lockhart*, 474 U.S. 52, 58 (1985), Stinson cannot satisfy *Strickland*'s prejudice prong with regard to this claim.[5]

Moreover, nothing in the plea colloquy or in the entire record before this court

---

[5]Stinson also states in his affidavit:

> On the day of my change of plea, we [Stinson and Bethel] had such a fight that Judge Coody excused himself from the bench to give us some time alone.  Mr. Bethel did nothing to help me at all.  Everything he told me was lie.

(Doc. No. 20-2 at 1.)  Stinson's bare, unsupported assertions here are insufficient to establish ineffective assistance of counsel or to indicate that his guilty plea was not knowing and voluntary.

indicates that Stinson's guilty plea was other than knowing and voluntary. During the plea colloquy, Stinson stated, under oath, that he understood the charges against him, his right to a jury trial, the presumption of innocence, the terms of his plea agreement (including the waiver provision), and the consequences of pleading guilty (including the sentences that could be imposed). (Doc. 26-3 [Gov. Exh. C] at 5-12.) Stinson also stated it was his decision to plead guilty and maintained he had not been threatened or forced to plead guilty. (*Id.* at 6-7.) After the court required Stinson's counsel to establish a factual basis for Stinson's plea, Stinson admitted that he possessed marijuana with intent to distribute it and that he possessed eight firearms in connection with or in furtherance of a drug trafficking crime. (*Id.* at 12-14.) The court then accepted Stinson's guilty plea, finding as follows:

> Mr. Stinson, the Court finds that you are fully competent and capable of entering an informed plea, that you are aware of the nature of the charges and the consequences of your plea agreement. I further find that your plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense.

(*Id.* at 15.)

"There is a strong presumption that the statements made during the [guilty plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). Moreover, a defendant's representations regarding the voluntary nature of his plea "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open

court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Certainly, Stinson alleges nothing in his § 2255 motion that overcome the "formidable barrier" created by his representations and admissions of guilt at his plea hearing.

For the reasons indicated above, Stinson is not entitled to any relief based on his claim that his guilty plea was not knowing and voluntary. To the extent that any allegations of ineffective assistance of counsel may be intertwined with Stinson's "involuntary guilty plea" claim, Stinson's failure to satisfy the standards of *Strickland* likewise disentitles him to relief based on counsel's alleged ineffective assistance.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Stinson be denied, as the claims therein entitle him to no relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before October 26, 2011**. A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See*

*Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

    Done this 12th day of October, 2011.

                        /s/Charles S. Coody
                        CHARLES S. COODY
                        UNITED STATES MAGISTRATE JUDGE